No. 4187.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF LORENZO ALEXANDER AND JULIA SHARKELFORD OR WASHINGTON, HIS WIFE.

1. Marriages by private agreement, express or implied, have never been recognized by the laws of Louisiana, which require that they shall be celebrated by a minister or a duly authorized public officer, in the presence of witnesses.
2. The Code of 1825 permitted the marriage of slaves with the consent of their masters, but did not dispense with the celebration of nuptials in such cases.
3. Dispositions in favor of persons incapable of receiving, in the name of an interposed person, are null, an ddescendants are in the number of persons reputed interposed.
4. This presumption of interposition is *juris et de jure and* cannot be overcome by contrary proof.

Appeal from Civil District Court, Division "E."

A. J. Peters, Attorney for Succession.

John May, Attorney for Ella Boyd and John Boyd, Appellant.

DUFOUR, J. In May, 1904, Julia Washington died, leaving a will by the terms of which she bequeathed to her two daughters, Georgiana Alexander, wife of John Peterson, and Ella C. Alexander, wife of Joseph Boyd, one half of her property, and to Walter L. Boyd the other half.

The property belonged to the community exissting between the testatrix and her predeceased husband, Alexander. Mrs. Peterson and Adam Alexander, her half brother, brought this suit to annul this will on the ground that Ella Boyd is not a legitimate child, and that her son, Walter L. Boyd is a person interposed.

From an adverse decision the defendants have appealed. Our able brother, Theard, in the course of an admirable opinion, says:

"The evidence, though conflicting, leaves no doubt in my mind as to the illegitimacy of Ella Boyd. Her age (she is

272

forty-six years old, whereas her alleged parents, Julia Washington and her first husband, James Washington, were married on August 16th, 1865); her color, (she is a light mulatress, whereas Julia was a dark negress and it has not been satisfactorily shown that James Washington was a mulatto); the place of her birth, (she was born in Texas, whereas Julia and James Washington were married in New Orleans), and the repeated statements of her mother, Julia, all tend to prove that Ella Boyd was born of the illicit intercourse between the said Julia and her white owner and master, Schackelford.

"About one fact there surely can be no dispute, and that is, that Ella was born out of wedlock. To discharge the burden resting upon her of proving that she was legitimated by her alleged natural parents subsequent marriage, something more was required than the testimony of two or three witnesses that she was known as Ella Washington, particularly where there was counter testimony to the effect that she went by the name of Ella Schackelford.

"It is contended, however, by defendant's counsel that as Julia and James Washington, who were slaves, lived together as man and wife in Texas prior to the Emancipation Act, they must be presumed to have been duly married..

Aside from the fact that the record is barren of proof that they lived together, before coming to New Orleans, no presumption of marriage arises from mere cohabitation as man and wife between slaves. Proof is indispensable of a public ceremony of marriage with the owner's consent. Heirs of Johnson vs. Raphael, not yet reported.

"Besides, if they were already married, why did they marry in August, 1865?

"As Julia Washington left a legitimate child by her marriage with Lorenzo Alexander, she could bequeath to Ella Boyd, her natural child, nothing beyond what was strictly necessary to procure her sustenance, or an occupation or profession which might maintain her; and as Ella Boyd is not in need of sustenance or of an occupation, having both a husband and a son to support her, the legacy to her is not merely reducible, but null and void. C. C. Art. 1483-1491.

"Null, also, is the legacy to Walter L. Boyd. Says the

273

Civil Code, Article 1491, just referred to: Every disposition in favor of a person incapable of receiving, shall be null, whether it be disguised under the form of an onerous contract, or be made under the name of a person interposed.

"The father and mother, the children and descendants and the husband or wife of the incapable person, shall be reputed persons interposed."

"Walter L. Boyd, being the son of Ella Boyd, the legacy to him must, under the plain letter of that Article, be held to be a legacy to her, and as such null and of no effect.

"True, it would seem, that since the testatrix has made a disposition in favor of her natural daugher directly, she must have meant the bequest to the latter's son to be personal. But that does not alter the conclusion of law.

"In his annotations on Article 911 C. N., of which our Article 1491 is a translation, Fuzier-Hermann says:

"La presomption legale d'interposition de personne au profit d'un incapable, telle que la formule l'article 911, Code Civil, est une presomption juris et de jure qui n'est susceptible d'etre combattue per ancune preuve contraire. Code Civil Annot, Supplement, p. 1016 No. 33.

"Il en est ainsi, alors qu'il paraitrait affirmativement que la liberalite s'adresse bien personnellement au donataire ou legataire ostensible ,et non a l'incapable viv-a-vis dequella loile repute personne interposee.: Ibid, No. 34.

"The legal presumption of interposition of persons for the benefit of an incapable, as formulated by Article 911, Civil Code, is a presumption juris et de jure, which can be overcome by no contrary proof."

"This is so, even though it should appear affirmatively that the liberality is intended personally for the ostensible donee or legatee, and not for the incapable as to whom he is reputed by the law to be a person interposed.

"In Bennett vs. Cane, et al, 18 A. 590, our Supreme Court took the same view of the legal presumption of interposition arising under Article 1491, (though not so stating in terms), and set aside in its entirety a joint legacy to a natural daughter and her legitimate offspring. After inquiring into the rights of the natural daughter, the Court concluded: "We are of opinion that she cannot receive the legacy made in her favor

274

by the will in question, and that her legal incapacity also excludes her child or children, who are considered in law as interposed persons. C. C. Art. 1478 (now 1491)."

6 An. 129, 10 An. 638, 110, La. 760.

We have examined the record and we find no reason for disturbing the conclusions of fact of the trial judge.

We have examined the law and have detected no error in its application. The case of Heirs of Johnson vs. Onegime Raphael, decided November 26th, 1906, fully sustains the opinion and after reviewing carefully previous jurisprudence ,holds that:

First—Marriages by private agreement, express or implied have never been recognized by the laws of Louiisana, which require that it shall be celebrated by a minister or a duly authorized public officer, in the presence of witnesses.

Second—The Code of 1825 permitted the marriages of slaves, with the consent of their masters, but did not dispense with the celebration of nuptials in such cases.

42 S. R. 470.

It is not disputed in this Court that Boyd is entitled to the administration.

Judgment affirmed.